IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Andrea M., | ) |
|     *Plaintiff*, | ) ) ) ) Case No. 3:22-cv-50105 |
| v. | ) ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | ) ) ) |
|     *Defendant*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andrea M. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for a period of disability and disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

Plaintiff filed an application for a period of disability and disability insurance benefits on October 15, 2018, alleging a disability beginning January 1, 2014, because of rheumatoid arthritis, fibromyalgia, migraines, low back pain, kidney stones, chronic and acute pancreatitis, chronic fatigue syndrome, hyperlipidemia, hypothyroidism, and chronic pain syndrome. R. 72–73. Plaintiff was 41 years old on her alleged onset date, and her date last insured was December 31, 2015. R. 15, 72.

A remote hearing on Plaintiff's applications was held before an administrative law judge (ALJ) on June 4, 2021. R. 15. The ALJ heard testimony from Plaintiff, medical expert Joseph C. Horozaniecki, M.D., and an impartial vocational expert (VE). R. 15. The ALJ issued a written

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 17.

decision on July 27, 2021, finding that Plaintiff was not disabled prior to her date last insured and thus not entitled to benefits. R. 25.

At step one of the inquiry, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. R. 17. At step two, the ALJ found that Plaintiff had the severe impairments of chronic pancreatitis, obesity, fibromyalgia, seronegative rheumatoid arthritis, and migraine headaches. R. 17. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 17–19. The ALJ concluded that Plaintiff had the residual functional capacity (RFC)

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes or scaffolds. She can occasionally bend and stoop. She can rarely kneel, crouch, and crawl. She can never be exposed to unprotected heights, dangerous heavy moving machinery or vibration. She can never perform power gripping, meaning full-force grasping or full-force gripping bilaterally. She can frequently handle and finger bilaterally.

R. 19. Applying this RFC at step four, the ALJ found that Plaintiff could not return to her past relevant work as a courtesy booth cashier, cake decorator, or baker helper. R. 23–24. At step five, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform, such as charge account clerk, document preparer, or order clerk. R. 25.

After the Appeals Council denied Plaintiff's request for review on February 8, 2022, R. 1, Plaintiff filed the instant action. Dkt. 1. Plaintiff's sole argument on appeal is that the ALJ erred as a matter of law by not addressing her aural atresia[2] and edema.

---

[2] Aural atresia is a congenital birth defect that results in "the absence of the ear canal," and those with aural atresia "will have hearing loss in that ear because sound waves cannot get to the inner ear." *Microtia & Aural Atresia*, Lurie Children's Hospital of Chicago, https://www.luriechildrens.org/en/specialties-conditions/microtia-aural-atresia/ (last visited May 16, 2023).

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

"In an RFC assessment and in a hypothetical question posed to a vocational expert, an ALJ must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) ("In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). However, this obligation applies only if the claimant has provided the ALJ with medical evidence that supports a functional limitation. *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022). The claimant cannot satisfy this burden by simply providing the ALJ with a diagnosis, because "[a] mere diagnosis does not establish functional limitations, severe impairments, or an inability to work." *McReynolds v. Berryhill*, 341

3

F. Supp. 3d 869, 882 (N.D. Ill. 2018) (internal quotation omitted); *see Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (unpublished). A claimant's testimony before the ALJ, in the absence of supporting medical evidence, is also insufficient to establish a functional limitation. *Durham*, 53 F.4th at 1096; *see* 42 U.S.C. § 423(d)(5)(A). Furthermore, as the party challenging the ALJ's decision on appeal, Plaintiff must invite the Court's attention to the medical records that support a specific functional limitation beyond those set forth by the ALJ in her hypothetical question; otherwise, the Court has no basis for remand. *Durham*, 53 F.4th at 1096.

Although the parties raise some overlapping arguments with respect to Plaintiff's aural atresia and edema, the Court will address each condition separately.

**A. Aural Atresia**

Plaintiff's aural atresia is noted in the record at an October 2014 appointment with an ear, nose, and throat specialist regarding Plaintiff's right-sided jaw pain, suspected to be secondary to an odontogenic infection. R. 586. The ENT specialist noted that Plaintiff "has a history of a complete right-sided aural atresia and had a multistage auricular reconstruction with a fantastic result. Her better-hearing ear is obviously on the left side." R. 586. When examining Plaintiff's ears, the ENT specialist remarked, "The reconstructive right ear is appreciated. There is no ear canal. Left external auditory canal tympanic membrane unremarkable." R. 586. At the telephonic hearing in June 2021, Plaintiff testified that she was born without a right ear and has no hearing on her right side. R. 54.

Plaintiff notes that "[a]lthough the medical evidence establishes that [she] was born without a right ear, there is absolutely no mention of aural atresia in the ALJ's decision." Pl.'s Br. at 2, Dkt. 11. Plaintiff argues that "[w]ith complete hearing loss in one ear, [she] is significantly limited in her ability to perform many basic work activities," conjecturing that "[d]eafness in one

4

ear . . . inherently must erode the labor market by eliminating numerous occupations" and that, for instance, she might have difficulty working as an order clerk in a loud restaurant or kitchen or as a charge account clerk in a loud call center. *Id.* at 2–4. Plaintiff argues that, because the ALJ did not elicit testimony from the VE regarding her hearing loss, the VE's job numbers are not founded on a complete understanding of her limitations and thus the Administration did not meet its burden to show that she could adapt to other work. *Id.* at 3.

In response, the Commissioner argues that Plaintiff is "attempt[ing] to flip the burden of proof [by] characterizing her argument as a challenge to the jobs cited by the vocational expert [and] claiming that the Commissioner did not meet her burden of showing a significant number of jobs at step five." Def.'s Br. at 7, Dkt. 14. The Commissioner argues that, in fact, Plaintiff did not satisfy her own burden "to prove these impairments and their resulting limitations and to provide evidence that established each of her limitations." *Id.* The Commissioner argues that Plaintiff's argument must be rejected because she "does not cite any medical evidence to support her claim that she experienced additional functional limitations" due to her hearing loss in one ear, and that in any event, Plaintiff did not appear to experience any such limitations. *Id.* at 8. The Court agrees with the Commissioner—although the ALJ was indeed obligated to ask the VE about all limitations supported by the medical evidence, this obligation was contingent on Plaintiff first supplying the ALJ with medical evidence to support those limitations, and Plaintiff failed to do so.

First, Plaintiff has not explained what specific functional limitations the ALJ should have included in her hypothetical to the VE based on Plaintiff's partial hearing loss. Plaintiff merely conjectures that, for two of the three occupations the VE identified, some unspecified number of jobs may require her to work in loud environments, and in those loud environments, she might have difficulty accurately and effectively communicating with coworkers and customers because

5

of her partial hearing loss. "There are numerous leaps of logic involved in this argument that diminish its effectiveness as a vehicle for undermining the ALJ's conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 745–46 (7th Cir. 2005). Plaintiff's argument seems to be that the ALJ should have included some limitation regarding loud workplaces in her hypothetical to the VE. However, as Plaintiff recognizes, the ALJ was only required to incorporate such a limitation if it was supported by medical evidence in the record. Pl.'s Br. at 3, Dkt. 11 (quoting *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)).

Notably, Plaintiff has not cited any medical evidence in the 4,306-page administrative record to support her argument. Plaintiff merely states that "the medical evidence establishes" that she was born without a right ear and has complete hearing loss in that ear.[3] Pl.'s Br. at 2, Dkt. 11. Despite Plaintiff's failure to cite the record, the Commissioner does not dispute these facts, and they are borne out by the uncontroverted medical evidence and testimony described above. R. 54, 586. Nevertheless, Plaintiff's argument still falls short because she fails to cite or even explain how the medical evidence supports a functional limitation due to her hearing loss. *Richards*, 743 F. App'x at 30 ("[P]ointing to various diagnoses and complaints and saying that they might hinder [the claimant] is insufficient to establish the existence of a functional limitation."). As the Commissioner points out, Plaintiff was required not just to supply medical evidence of hearing loss but to supply medical evidence showing that her hearing loss resulted in a functional limitation.

---

[3] Plaintiff filed her opening brief before the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) took effect on December 1, 2022. The Court is confident that future briefs from Plaintiff's counsel will satisfy the requirement that "[a] brief must support assertions of fact by citations to particular parts of the record." Suppl. Rule 5.

In Plaintiff's reply brief, she does not address this shortcoming in her argument; she merely asserts, without support, "Surely, complete deafness in one ear is a limitation." Pl.'s Reply at 2, Dkt. 15. The Court is not so sure—a diagnosis or symptom "does not automatically translate to a limitation or impairment[,] and simply listing [it] proves nothing." *Perez v. Astrue*, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012); *see also Richards*, 743 F. App'x at 30 ("[The Court] cannot reasonably expect an ALJ to 'intuit' a functional limitation from the whole record, nor can [the Court] look at the record anew to draw one out."). Indeed, Plaintiff's partial hearing loss, present since birth, did not prevent her from working several jobs from 1997 to 2010, including as a video store clerk, movie theater usher, and grocery store cashier. R. 302. When Plaintiff testified about her work at the grocery store, she did not mention any difficulty due to her partial hearing loss, nor did she mention her partial hearing loss as a reason for being unable to work. R. 37–40. Although Plaintiff faults the ALJ for not mentioning aural atresia in her decision, Plaintiff herself did not allege aural atresia as an impairment at the initial or reconsideration levels. R. 72–73, 79–80. Plaintiff did not mention aural atresia in either of her function reports. R. 313–20, 336–43. Indeed, in Plaintiff's November 2018 function report, she indicated that her illnesses, injuries, and conditions did not affect her hearing. R. 318. In her March 2019 function report, Plaintiff checked a box to indicate that her illnesses, injuries, and conditions affected her hearing but only referred to chronic pain and "fibro fog," not aural atresia, as potential causes. R. 341. In September 2015, Plaintiff responded "No" when asked if she was deaf or had difficulty hearing, R. 722, and her hearing was described as "intact to spoken word." R. 2773, 3217. Plaintiff did not provide a medical opinion addressing her aural atresia or partial hearing loss; the only medical opinion Plaintiff provided came from her rheumatologist in June 2019. R. 3544–49. In June 2021, Plaintiff was able to participate in a telephonic hearing, apparently without difficulty, and although she

testified that she was born without a right ear and has no hearing on her right side, R. 54, her hearing loss was not mentioned again, even when Plaintiff's counsel questioned Dr. Horozaniecki and the VE. R. 59–66, 70–71.

In short, Plaintiff has not identified a specific functional limitation that she believes the ALJ should have included in her hypothetical to the VE, and Plaintiff has not pointed to any medical evidence to support a hearing loss–related limitation in an administrative record containing significant evidence suggesting that Plaintiff's hearing loss has not affected her ability to work. Accordingly, the Court has no basis for overturning the ALJ's decision with respect to Plaintiff's hearing loss. *See Gedatus*, 994 F.3d at 905 (affirming ALJ's decision that did not assess functional impact of claimant's tremors when claimant did not identify "any medical opinion or evidence to show any tremors caused any specific limitations").

**B. Edema**

Plaintiff also argues that the ALJ erred when assessing her RFC by failing to incorporate limitations due to Plaintiff's edema, which Plaintiff claims are supported by the medical record. Pl.'s Br. at 5, Dkt. 11. At the hearing, Plaintiff testified that, during the relevant period, she would get edema in her feet and lower legs and have to put her feet up. R. 48–49. When Plaintiff's counsel asked Plaintiff how often she had to put her feet up, Plaintiff testified, "Probably about, you know, four or five times a day. If I'm walking around, then my feet will get swollen, then I'll have to sit back down and put my feet up." R. 49. Plaintiff was not asked how long she had to elevate her feet or to what level of elevation. When Plaintiff's counsel asked the VE whether the need to elevate one's feet throughout the day would preclude work, the VE testified that it would depend on the level of elevation, but the need to elevate one's feet above heart level would be work preclusive. R. 70–71. Plaintiff argues that, in light of this testimony and "the medical records evidenc[ing]

8

diagnosis and treatment for edema and prescriptions for diuretics," the ALJ erred by failing to consider Plaintiff's edema as part of her RFC assessment. Pl.'s Br. at 5, Dkt. 11.

As with Plaintiff's hearing loss, the Commissioner argues that Plaintiff failed to satisfy her own burden of providing the ALJ with "medical evidence supporting her claim that her . . . edema resulted in any specific additional functional limitations." Def.'s Br. at 7–8, Dkt. 14. The Commissioner notes that Plaintiff "only cites to her subjective complaint that she had edema in her legs and feet and must elevate them four to five times per day . . . [which] is insufficient to prove that she experienced any functional limitation due to her edema." *Id.* at 8. The Commissioner argues that Plaintiff's failure to cite any medical evidence in support of her argument could properly be treated as a forfeiture of her argument. *Id.* (citing *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011)).

In her reply brief, Plaintiff belatedly cites the following medical evidence that she believes supports her argument:

> The medical records contain numerous references to edema prior to the date last insured of December 31, 2015. For example, on October 24, 2013, Plaintiff sought treatment for bilateral calf pain and varicose veins. [R. 817–18]. Her physician recommended lowering salt intake, weight loss, and compression stockings. In 2014, Plaintiff's doctor diagnosed edema in her legs and prescribed a diuretic, hydrochlorothiazide. [R. 940–43, 959]. In November 2014, Plaintiff reported wearing bilateral compression stockings on her hands to alleviate edema. During that examination, she had 14/14 trigger points.[4] [R. 1026–27]. On May 7, 2015 and September 29, 2015, Plaintiff was again diagnosed with edema. [R. 1053–54, 1161]. On October 16, 2015, Plaintiff saw a nephrologist for bilateral edema, despite already taking [hydrochlorothiazide] and a Potassium supplement. [R. 1177–83].

---

[4] Plaintiff does not explain how trigger points, which are associated with fibromyalgia, relate to her edema, so the Court will not address them. *See also Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *2 (W.D. Wis. Aug. 2, 2013) (noting association between "fourteen trigger points" and "evolving fibromyalgia").

9

Pl.'s Reply at 1–2, Dkt. 15. Notably absent from Plaintiff's recitation is any reference to functional limitations or any indication that Plaintiff's edema ever required her to elevate her feet to reduce swelling, much less elevate her feet above heart level four to five times per day. Accordingly, Plaintiff's argument that the medical evidence supports an edema-related limitation remains undeveloped and thus is forfeited. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).

Even if Plaintiff had not forfeited this argument, however, the Court's own review of these records reveals that they largely contradict Plaintiff's claim that her edema resulted in a functional limitation. At the October 2013 appointment, before the disability period began, nurse practitioner Christopher Bussan recommended that Plaintiff wear "graduated compression stockings on in the morning, off at bedtime" for her varicose veins. R. 818. However, Bussan did not mention edema or indicate that Plaintiff's varicose veins or compression stockings would have any impact on her ability to function in a work environment. R. 817–18. In May 2014, Bussan noted "just trace edema" in Plaintiff's extremities and prescribed hydrochlorothiazide. R. 942–43. At that appointment, Plaintiff reported "stiffness in her ankles" but did not mention a need to elevate her feet. R. 942. In November 2014, Plaintiff reported "swelling in her hands" but did not mention any swelling in her lower extremities or need to elevate her feet. R. 1027. In May 2015, Bussan examined Plaintiff's extremities and noted that they were "[w]ithout cyanosis or edema." R. 1053. Plaintiff reported stiffness on the tops of her feet but "denie[d] any single or symmetrical joint swelling" and did not mention a need to elevate her feet. R. 1053. Bussan noted that "[Plaintiff] was asking about continuing the [hydrochlorothiazide], which she uses as needed. I told her that as long as she is only using it sparingly[,] she certainly may continue, as it has helped with edema of the hands and feet." R. 1054. In September 2015, Bussan recorded Plaintiff's diagnosis of edema, but did not otherwise discuss it. R. 1161. In October 2015, Plaintiff's nephrologist noted

10

that "[Plaintiff wa]s also on [hydrochlorothiazide] for edema and low potassium as well as potassium supplementation," but he also examined Plaintiff's extremities and noted that they were "normal." R. 1178, 1182. Finally, in December 2015, Bussan reported that Plaintiff's hydrochlorothiazide prescription had been discontinued by another provider because it could potentially trigger pancreatitis. R. 1189. However, Plaintiff had restarted it on her own and asked for a refill because "she was getting sock-line edema at the end of the day without it." R. 1189. Bussan examined Plaintiff's extremities, again found that they were "[w]ithout cyanosis or edema," and prescribed the refill. R. 1189.

In sum, the medical records cited by Plaintiff do not show that she ever reported a need to elevate her feet, ever discussed elevating her feet with her medical providers, or was ever directed by those providers to elevate her feet. Rather, these records show that "just trace edema" was observed on a single occasion and treated with a diuretic throughout the remainder of the disability period, apparently with complete success. Because Plaintiff has identified no medical evidence in the record to support her testified limitation, the Court finds that the ALJ did not err by failing to include this limitation in her RFC assessment or hypothetical question to the VE. *Durham*, 53 F.4th at 1096 (affirming ALJ's decision not to incorporate claimant's testimony that she needed to elevate her feet when claimant failed to come forward with any medical record supporting this testimony).

11

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the Commissioner's decision is affirmed.

Date: May 16, 2023          By: _____
                                Lisa A. Jensen
                                United States Magistrate Judge